UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FRANCIS FAYE OAK,

                              Plaintiff,

        v.

MULTICARE HEALTH SYSTEM,

                              Defendant.

CASE NO. 3:25-cv-05913-DGE

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (DKT. NO. 11)

This matter comes before the Court on Plaintiff's motion to remand this case to Pierce County Superior Court.  (Dkt. No. 11.)  For the reasons discussed herein, Plaintiff's motion to remand (Dkt. No. 11) is GRANTED.

**I      BACKGROUND**

**A.  Factual Background**

The following summary is based on the factual allegations contained in the Complaint. Since 2023, Defendant has employed Plaintiff as a bereavement counselor.  (Dkt. No. 1-1 at 18.) As an employee, Plaintiff is enrolled in Defendant's health care coverage plan known as the

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (DKT. NO. 11) - 1

MultiCare Health System Flexible Benefits Program, MultiCare MyConnected Care Plan (the "Plan"). (*Id.* at 3, 18.) Plaintiff alleges the Plan is part of Defendant's "compensation for employment." (*Id.* at 3.)

Plaintiff is a woman and transgender. (*Id.* at 18.) Plaintiff was diagnosed with gender dysphoria in 2021 and has been receiving gender-affirming health care since that time. (*Id.*) Upon her employment with Defendant, Plaintiff sought pre-authorization for gender-affirming facial feminization surgery. (*Id.*) Defendant denied the pre-authorization request because the Plan excluded such medical treatment. (*Id.* at 19.) Defendant identified, "the requested procedures . . . for facial feminization surgery is a Health Plan exclusion and Not a Covered Benefit. This determination is based on the specific benefit exclusion and is not based on the medical necessity of the service requested." (*Id.* at 168.) Specifically, the Plan excludes from coverage "[c]osmetic services, supplies or surgery to repair, modify or reshape a functioning body structure for improvement of the patient's appearance or self-esteem (except for gender affirmation surgery)." (*Id.* at 115.) The Plan further excludes from coverage "[t]ransgender/gender affirming services," under which a lengthy list of procedures are identified as "[s]ervices that are considered cosmetic[.]" (*Id.* at 117.) Theses provisions are hereinafter referred to collectively as the "Exclusion."

Plaintiff acknowledges that "[o]n the face of the Plan, [the procedures she sought are] surgical procedures . . . excluded expressly when they are sought as treatment for gender dysphoria, a condition with which only transgender people are diagnosed." (*Id.* at 5.) Plaintiff alleges Defendant designed the Exclusion in the Plan and "[b]y intentional design, the Exclusion is uniquely targeted at transgender employees[.]" (*Id.* at 14.) Plaintiff states she "brings this action to challenge MultiCare's blanket exclusion of medically necessary gender-affirming care

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (DKT. NO. 11) - 2

as illegal sex discrimination and/or sexual orientation discrimination and to obtain a judgment declaring it unlawful, thereby preventing its enforcement." (*Id*. at 6.) Plaintiff asserts one cause of action under the Washington Law Against Discrimination ("WLAD"). (*Id*. at 21–22.) Plaintiff alleges Defendant is violating the WLAD because the Exclusion "is illegal facial or proxy discrimination based on sex" and that Defendant "has drawn a classification that discriminates based on sex and/or sexual orientation, including but not limited to gender identity, transgender status, and gender transition. (*Id*.) Plaintiff seeks remedies under the WLAD including "injunctive relief requiring MultiCare to stop its facially discriminatory policy, actual damages resulting from the enforcement of the Transgender Exclusion, emotional distress damages, attorney fees, and all other appropriate remedies permitted" under the WLAD. (*Id*. at 21.)

## B. Procedural Background

Plaintiff filed her complaint in Pierce County Superior Court on September 22, 2025. (Dkt. No. 1-1.) On October 9, 2025, Defendant removed the matter to this Court by asserting federal question jurisdiction based on the Employee Retirement Income Security Act of 1974 ("ERISA"). (Dkt. No. 1 at 2.) On November 13, 2025, Plaintiff moved to remand this case to Pierce County Superior Court arguing that "ERISA does not apply to the claim in this case" and there is no federal question jurisdiction because she is bringing only a claim under WLAD. (Dkt. No. 11 at 1–2.) Defendant opposes remand. (Dkt. No. 12.) The motion is fully briefed. (*See* Dkt. Nos. 12, 13.)

## II    LEGAL STANDARD

### A. Motions to remand

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (DKT. NO. 11) - 3

District courts have federal question jurisdiction over "all civil actions that arise under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1091 (9th Cir. 2009) (citation omitted).  "'In determining the existence of removal jurisdiction, based upon a federal question, the court must look to the complaint as of the time the removal petition was filed.'" *Abada v. Charles Schwab & Co.*, 300 F.3d 1112, 1117 (9th Cir. 2002) (quoting *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1379 (9th Cir. 1988)) (italics omitted).

**B.  ERISA preemption**

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).  ERISA is a "closely integrated regulatory system" that imposes certain requirements and sets certain standards for pension and welfare plans.  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990).  "Congress included various safeguards to preclude abuse and 'to completely secure the rights and expectations brought into being by this landmark reform legislation.'" *Id*. (quoting S.Rep. No. 93-127, p. 36 (1973)).  Among these safeguards, "[t]here are two strands of ERISA preemption: (1) 'express' preemption under ERISA § 514(a), 29 U.S.C. § 1144(a); and (2) preemption due to a 'conflict' with ERISA's exclusive remedial scheme set forth in ERISA § 502(a), 29 U.S.C. § 1132(a)." *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011) (brackets omitted).

### III    ANALYSIS

Plaintiff asserts she "pleads a single WLAD claim" and that ERISA does not preempt such claim. (Dkt. No. 11 at 6, 8–9). She further asserts her WLAD claim is not "an ERISA claim in disguise" because she "challenges the design of the employer-sponsored health plan." (*Id*. at 9–10.) Defendant acknowledges the "Plan denied her claim because it excludes the requested procedures," but asserts that because Plaintiff's "claim is predicated on the alleged wrongful denial of benefits under an ERISA-governed plan[,] it arises exclusively under ERISA." (Dkt. No. 12 at 1–2.) Defendant argues ERISA § 502(a) and § 514(a) preempt Plaintiff's claim and, therefore, removal was proper. (*Id*. at 5–16.)

**A. ERISA§ 514(a) does not provide federal question jurisdiction and was not a proper basis to remove Plaintiff's complaint.**

Section 514(a) "broadly preempts 'any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan.'" *Fossen*, 660 F.3d at 1108 (quoting 29 U.S.C. § 1144(a). However, "a defense of federal preemption of a state-law claim, even conflict preemption under § 514(a) of ERISA, is an insufficient basis for original federal question jurisdiction under § 1331(a) and removal jurisdiction under § 1441(a)." *Marin General Hospital v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). Put another way, even if § 514 does preempt Plaintiff's claim, "a defense of conflict preemption under § 514(a) does not confer federal question jurisdiction on a federal district court." *Id*.

The Court finds Defendant asserts ERISA § 514 as a defense to Plaintiff's WLAD claim. (*See* Dkt. No. 12 at 13) ("Ms. Oak's WLAD claim is squarely preempted by ERISA § 514."). But any reliance Defendant placed on § 514 to support removal of Plaintiff's claims is

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (DKT. NO. 11) - 5

misplaced.  § 514 does not confer federal question jurisdiction and removal based on § 514 was, and continues to be, improper.

**B. ERISA § 502(a) conflict preemption also does not apply.**

Section 502(a) "confers federal subject matter jurisdiction for claims that nominally arise under state law." *Fossen*, 660 F.3d at 1107; *see also Marin General Hospital*, 581 F.3d at 945 (comparing "complete preemption under § 502(a), which provides a basis for federal question removal jurisdiction, and conflict preemption under § 514(a), which does not").  ERISA § 502(a) allows a "participant or beneficiary" to bring a civil action based on an administrator's refusal to supply requested information or "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1).

Whether a state law is preempted by section 502(a) is a two-part analysis. *Fossen*, 660 F.3d at 1107–1108.  "[A] state-law cause of action is completely preempted if (1) 'an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B),' and (2) 'where there is no other independent legal duty that is implicated by a defendant's actions.'" *Marin General Hospital*, 581 F.3d at 946 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).  Both prongs must be met.  *Id*. at 947.

    1. *Davila* prong 1: whether Plaintiff could have brought her claim under ERISA § 502(a)(1)(B).

ERISA § 502(a)(1)(B) covers only claims to "recover benefits," "enforce [] rights," or "clarify [] rights" due under an ERISA-governed plan.  29 U.S.C. § 1132(a)(1).  Defendant asserts Plaintiff's claim can be brought under ERISA § 502(a)(1)(B) because Plaintiff "ask[s] the Court to find that under the Plan she is entitled to the benefits she seeks" and because Plaintiff

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (DKT. NO. 11) - 6

"seeks to change how MultiCare interprets the Plan and clarify her rights to future benefits under the Plan." (Dkt. No. 12 at 8–9.)

However, Defendant acknowledges the Plan excludes coverage for the procedures Plaintiff sought. (*Id*. at 1; *see also* Dkt. 1-1 at 168 ("the requested procedures . . . for facial feminization surgery is a Health Plan exclusion and Not a Covered Benefit")). Plaintiff also acknowledges the Plan excludes coverage for the medical procedures she sought. (Dkt. No. 1-1 at 21) ("On the face of the MultiCare Plan, certain clinically effective surgeries that are the standard of care for treatment of gender dysphoria are expressly singled out and excluded from coverage precisely because they treat transgender people."). Plaintiff further notes "[s]he does not allege that the ERISA plan administrator for MultiCare misconstrued the plan terms or denied benefits to which under the plan language she is entitled." (Dkt. No. 11 at 10.)

Thus, the Parties agree the Plan excludes the procedures Plaintiff sought. Based on this agreement, the Court is unable to conclude Plaintiff's complaint seeks to "recover benefits," "enforce [] rights," or "clarify [] rights" due under an ERISA-governed plan.

Defendant also argues Plaintiff's "claim arose only because of the denial of coverage." (Dkt. No. 12 at 8.) But while it may be true that this dispute arose because the Plan excludes coverage for gender-affirming procedures, Plaintiff's claim does not allege such denial violated the terms of the Plan. The Court, therefore, has no reason to analyze whether Defendant followed the terms of the Plan because neither Party disputes the Plan by its terms excludes coverage for the procedures Plaintiff sought.

Defendant further argues Plaintiff can maintain her claim under § 502(a)(1)(B) if "'(1) there is a relevant ERISA plan; (2) plaintiff has standing to sue under the plan; (3) the defendant is an ERISA entity; and (4) the [complaint] 'seeks compensatory relief akin to that available

under § 502(a).'" (Dkt. No. 12 at 7) (quoting *McGill v. Pac. Bell Tel. Co.*, 139 F. Supp. 3d 1109, 1117 (C.D. Cal. 2015)).  But Plaintiff does not seek compensatory relief akin to that available under § 502(a).  Here, Plaintiff asks for declaratory judgment that Defendant's "blanket exclusion of gender-affirming care discriminates because of sex and/or sexual identity in violation of  the WLAD"; for damages that would fully compensate "the financial harm, emotional distress and suffering, embarrassment, humiliation, pain and anguish, violation of her dignity, and other damages" caused by a violation of the WLAD; and for declaratory relief prohibiting Defendant from maintaining a health plan that "eliminate[s] coverage for gender-affirming care as 'cosmetic' or because the treatment is for or related to an employee's sex or diagnosis with gender dysphoria."  (Dkt. No. 1-1 at 22.)

Accordingly, *Davila* prong one is not satisfied.

2.  *Davila* prong 2: whether Plaintiff's claim implicates an independent legal duty.

"[A] state-law claim is not preempted if it reflects an 'attempt to remedy [a] violation of a legal duty independent of ERISA[.]'" *Depot Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 667 (9th Cir. 2019) (quoting *Davila*, 542 U.S. at 214).  "State-law claims are based on other independent legal duties when they are in no way based on an obligation under an ERISA plan and would exist whether or not an ERISA plan existed."  *Id*. (cleaned up); *see also Marin General Hospital*, 581 F.3d at 950.

Defendant argues Plaintiff's "claims are based on her application for Plan benefits" and that "[b]ut for the terms [of the Plan], Ms. Oak would not have a claim."  (Dkt. No. 12 at 11.)  According to Defendant, "nothing in the Complaint implicates an independent legal duty aside from the obligations of the respective parties set forth in the Plan documents."  (*Id*.)  Defendant's

arguments focus on the Plan's existence; in essence, if the Plan did not exist, Plaintiff would have no basis to complain of any discrimination under the WLAD.

But Plaintiff points out that Defendant has an employer-employee relationship governed by the WLAD and which exists independent of their ERISA Plan administrator-beneficiary relationship. (Dkt. No. 13 at 6–7.) Plaintiff argues that the Plan is a form of employment compensation and that Defendant, as an employer, may not discriminate when it designs such employment compensation. (Dkt. No. 13 at 7.) The complaint itself does allege the Plan is part of an employee compensation package: "[a]s part of its compensation for employment, Multicare provides its employees with health care coverage through a self-funded plan" (Dkt. No. 1-1 at 3); the Plan is "an employment benefit" (*id*. at 7); "[h]ealth insurance and other fringe benefits are a form of compensation or privileges of employment" (*id*. at 17); "[a]s part of the terms, conditions, privileges, and status of her employment . . . , Ms. Oak is and, at all relevant times, was enrolled in MultiCare's Plan" (*id*. at 18); "[a]n exclusion of care in employment benefits, which treats transgender individuals differently than non-transgender individuals . . . is sex discrimination" (*id*. at 19). Thus, according to Plaintiff, "[t]he discrimination began when MultiCare designed a compensation package excluding transgender healthcare, not when its Plan administrator administered that exclusion." (Dkt. No. 13 at 7.)

When the Plan is viewed as part of Plaintiff's employment compensation package, it becomes clear that the obligation to provide a non-discriminatory compensation package, under the WLAD as alleged by Plaintiff, is a legal duty independent of any obligation owed under the Plan. The Defendant's duty under the WLAD to provide a non-discriminatory employment compensation package is a duty that exists whether or not the Plan existed. And determining whether Defendant complied with its duties under the WLAD requires interpretation of state law,

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (DKT. NO. 11) - 9

not interpretation of the Plan.  Therefore, Plaintiff's WLAD claim implicates an independent legal duty.

As with the first *Davila* prong, the second *Davila* prong has not been satisfied.

## IV    ORDER

For the reasons stated herein, the Court finds and ORDERS that Plaintiff's motion to remand (Dkt. No. 11) is GRANTED.  The Court REMANDS the matter to Pierce County Superior Court.

Dated this 31st day of March, 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (DKT. NO. 11) - 10